IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CE DESIGN LTD., PALDO SIGN AND DISPLAY COMPANY, and ADDISON AUTOMATICS, INC., Illinois corporations, individually and as the representatives of a class of similarly-situated persons, | ) ) ) ) ) ) Case No. 09-CV-2057 ) |
| Plaintiffs, | ) Magistrate Judge Schenkier ) |
| v. | ) ) |
| KING SUPPLY COMPANY, LLC d/b/a ARCHITECTURAL METALS, | ) ) ) |
| Defendant. | ) |

## UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND NOTICE TO THE SETTLEMENT CLASS

Plaintiffs, CE Design, Ltd., Paldo Sign and Display Co., and Addison Automatics, Inc. (collectively "Plaintiffs"), respectfully request that the Court enter an order pursuant to Fed. R. Civ. P. 23 (e): (1) preliminarily approving the parties' proposed Settlement Agreement (the "Agreement") attached hereto as Exhibit A, (2) approving the form of Class Notice attached as Exhibit 2 to the Agreement and approving its dissemination to the Settlement Class by facsimile, and (3) setting dates for exclusion requests, objections, and a fairness hearing. A proposed Order Preliminarily Approving the Class Action Settlement and Approving the Class Notice is attached as Exhibit 1 to the Agreement (and will be submitted in electronic format to the Court pursuant to its rules).

I.  BACKGROUND AND SUMMARY OF SETTLEMENT.

1.  In this action, Plaintiffs contend that King Supply Co. LLC d/b/a Architectural Metals ("Defendant"), violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), the Illinois Consumer Fraud and Deceptive Practices Act, and the common law of conversion by faxing facsimiles to persons without their consent.

2.  Defendant promptly tendered its defense in the Litigation to its insurers, which had issued two commercial general liability primary policies to King for the policy periods of March 20, 2008 to March 20, 2010. The insurers also issued two commercial umbrella policies to King for the policy periods of March 20, 2008 to March 20, 2010. The insurers denied coverage and refused to defend King in this Litigation under these policies.

3.  After reviewing and analyzing the legal and factual issues presented in this action, the risks and expenses involved in pursuing the litigation to conclusion, the likelihood of a damage award in excess of that negotiated in this settlement, the protracted nature of the litigation, and the likelihood, costs, and possible outcomes of one or more procedural and substantive appeals, Plaintiffs and Defendant reached an agreement to settle this case on a class-wide basis.

4.  Because of Defendant's inability to pay except through its insurance policies, Plaintiffs' attorneys decided that the settlement is fair, reasonable, and adequate for the Settlement Class.

5.  The key terms of the Agreement are as follows:

(a) <u>Class Certification</u>. The parties agreed to a "Settlement Class" defined as "All persons who were sent any telephone facsimile message in 2009 by King Architectural Metals but who did not directly request that King Architectural Metals send the specific facsimile they received." Excluded from the Settlement Class are King Supply Company, LLC d/b/a King Architectural Metals, any of its parents, subsidiaries, affiliates or controlled persons, and its officers, directors, partners, members, agents, servants, and employees of any kind, and the members of their immediate families. Also excluded are persons who timely exercised their right of exclusion. Defendant agreed to certification of this Settlement Class for settlement purposes only.

(b) <u>Submission of Financial Information</u>. Defendant produced to Plaintiffs its 2009 and 2010 tax returns, and a loan modification in effect between it and its lender, the Bank of America, containing a covenant that finds King in default if it becomes subject to a final order or judgment for an amount in excess of $200,000. King has furnished a copy of this covenant to Plaintiffs' counsel and, if requested, will make such proof available to the Court for review as part of the settlement approval process. Additionally, if requested, King will submit its 2009 and 2010 tax returns to the Court for consideration *in camera* at preliminary approval. King designated all of these documents as "Confidential" under the Protective Order entered on October 13, 2009 (Doc. 32).

(c) <u>Judgment and Payment</u>. Plaintiffs will move the Court to enter

3

judgment in favor of the Settlement Class and against Defendant in the total amount of $20,000,000.00 for all claims that were brought or could have been brought arising out of the 669,000 faxes sent in 2009 (the "Judgment"), allocated as follows: (1) $15,650,415 for TCPA claims, (2) $3,349,585 for conversion claims, and (3) $1,000,000 for all other claims. Defendant has agreed not to oppose this motion.

In a dollar-for-dollar partial satisfaction of $200,000 of the TCPA portion of the Judgment, within three business days after the Final Approval Order becomes final and non-appealable, Defendant will pay $200,000 by wire transfer or certified check to Plaintiffs' attorneys, who will hold it in a segregated client trust account for the benefit of the Settlement Class. Failure by Defendant to make this $200,000 payment would give Plaintiffs the option of revoking the settlement and reinstating the case. In exchange for the Settlement, and except for the $200,000 payment from Defendant referenced in this paragraph, Plaintiffs and the Settlement Class covenant not to execute against Defendant or Defendant's assets other than insurance to collect the Judgment. The Judgment or final order shall not obligate Defendant at any time to pay money in excess of $200,000, except through its insurance policies.

(d) <u>Covenant Not to Execute</u>. The Plaintiffs and the Settlement Class have agreed not to seek to execute against, attach, lien, or otherwise seek to acquire any interest in the property or assets of Defendant or any of

4

its members, partners, agents, officers, directors, shareholders, and employees of any kind (except for its insurers and other than the proceeds of Defendant's insurance policies and the $200,000 payment from Defendant required above) to satisfy or recover on the Judgment, and agree to seek recovery to satisfy the Judgment only from Defendant's insurance policies and from the $200,000 payment from King required above. Plaintiffs and the Settlement Class agree not to execute against Defendant's non-insurance assets – outside of the $200,000 payment from Defendant required above – even if a determination is made that Defendant's insurance carrier does not owe defense or indemnity coverage for the claims alleged in the Litigation.

(e) <u>Class Notice</u>. The parties propose to send the class notice by fax to the fax numbers in question. The proposed notice is attached to the Agreement as Exhibit 2. Defendant has agreed to pay the costs of sending the notice by fax.

(f) <u>Attorney's Fees and Costs and Incentive Award</u>. Plaintiffs' attorneys shall apply to receive attorney's fees of one-third of the recovery plus out-of-pocket costs incurred. Defendant will not oppose this request. Plaintiffs' attorneys shall also apply for each Plaintiff to receive a $10,000 incentive award to be paid only from a recovery from the insurance proceeds. Defendant will not oppose this request. At final approval, Plaintiffs' attorneys shall request reimbursement of their out-of-pocket expenses incurred to date from the $200,000 initially paid by Defendant.

## II. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.

### A. THE COURT SHOULD CERTIFY A SETTLEMENT CLASS.

6. Certification of a settlement class is appropriate under Fed. R. Civ. P. 23 (a), (b) (3) and (g). Here, the parties have agreed to the following "Settlement Class": "All persons who were sent any telephone facsimile message in 2009 by King Architectural Metals but who did not directly request that King Architectural Metals send the specific facsimile they received."

7. A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23 (a) (1). The Settlement Class includes persons holding more than 140,000 different fax numbers that received more than 669,000 successful fax transmissions. As a result, "numerosity" is satisfied.

8. Rule 23 (a) also requires "questions of law or fact common to the class." Fed. R. Civ. P. 23 (a) (2). Here, Plaintiffs have alleged that Defendant engaged in standardized conduct involving a common nucleus of operative facts by sending facsimiles to thousands of persons without their consent.

9. Rule 23 (a)'s third requirement is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23 (a) (3). Here, Plaintiffs' claims and the other proposed class members' claims all arise from the same conduct.

10. Rule 23 (a)'s final requirement is that the class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23 (a) (4). There is no antagonism between Plaintiffs' interests and the interests of the other members of the Settlement Class. Further, Plaintiffs' counsel are experienced class action lawyers. Consequently, Plaintiffs are fair and adequate representatives of the Settlement Class.

11. Rule 23 (b) (3) requires that common questions of law or fact predominate over individual questions. Here, Plaintiffs allege that Defendant engaged in standardized conduct involving a common nucleus of operative facts by sending form facsimiles to thousands of persons without their consent.

12. Finally, Rule 23 (b) (3) requires that a class action be the superior method for adjudicating the claims. Here, the class wide settlement will achieve economies of time, effort and expense while promoting uniformity of decision as to persons similarly situated. It is the superior method for resolving the claims at issue.

13. For these reasons, the Court should certify the Settlement Class as part of the parties' settlement.

### B. THE PROPOSED SETTLEMENT IS WITHIN THE RANGE OF POSSIBLE APPROVAL.

14. A district court's review of a proposed Class Action Settlement is a two-step process. *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305,314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). The first step is to hold a preliminary fairness hearing prior to the giving

7

of the notice to class members. *Id.* The purpose of the preliminary hearing is to determine whether the proposed settlement is "within range of possible approval." *In re General Motors Corporation Engine Interchange Litigation*, 594 F.2d 1006, 1124 (7th Cir. 1979). *See also Carnegie v. Household International, Inc.* 371 F. Supp. 954, 955 (N.D. Ill. 2005) (purpose of fairness hearing is to "determine whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing").

    C.    **STANDARD FOR JUDICIAL EVALUATION AND APPROVAL.**

    15.    A court may approve a settlement if the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e) (2). *See Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463F3N 646, 652 (7th Cir. 2006); *DHL v. Thoroughbred Technology + Telecom.*, 309 F.3d 978, 986 (7th Cir. 2002). It is well-established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). If the court finds that the settlement falls "within the range of possible approval," the court should grant preliminary approval and authorize the parties to give notice of the settlement to class members. *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).

    D.    **FACTORS TO BE CONSIDERED IN DETERMINING WHETHER A SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.**

    16.    The factors for consideration are: (1) the strength of Plaintiffs' case on the merits compared to the amount of the settlement; (2) the Defendant's ability to

pay; (3) the likely complexity, length and expense of further litigation; (4) opposition to the settlement from members of the class; (5) evidence of collusion; (6) opinions of counsel; (7) the stage of the proceedings and the amount of discovery completed at the time of settlement; and (8) the public interest. *Isby v. Bayh*, 75 F.3d 1191, 1198-1199 (7th Cir. 1996).

17. Here, consideration of these factors shows the proposed settlement is within the range of possible approval, so notice should be sent and a fairness hearing should be scheduled.

### 1. Strength on the Merits Compared to the Settlement Amount.

18. The Parties agree that the Settlement Class includes approximately 143,000 persons to whom Defendant sent more than 660,000 facsimiles in 2009. A finding of Defendant's liability to the Settlement Class under the TCPA, for example, with statutory damages of $500 per fax, would result in a damage award of $250,000,000.00. Given Defendant's inability to pay any judgment more than $200,000 from anything other than its insurance assets, a payment of $200,000 plus a judgment collectible from Defendant's insurance is a reasonable compromise of the Settlement Class's claims. Defendant raised several possible defenses to the claims, including arguing that faxes were received by persons who had consented to receive them or with whom Defendant had an existing business relationship.

### 2. Defendant's Ability to Pay.

19. Defendant cannot pay a judgment of more than $200,000 except through its insurance assets. Defendant would have to file for bankruptcy if the

Settlement Class were to pursue collection of a money judgment solely against Defendant. As an unsecured judgment creditor, the Settlement Class would likely recover less than the costs and expenses of litigating their claims in bankruptcy, and would be forced to seek recovery from the insurance anyway.

20. Defendant purchased insurance policies covering the relevant time period. That insurance provides a source from which the Settlement Class can seek compensation for their claims against Defendant.

21. Defendant promptly tendered its defense in the Litigation to its insurer, which had issued two commercial general liability primary policies to Defendant for the policy periods of March 20, 2008 to March 20, 2010, and commercial umbrella policies to Defendant for the policy periods of March 20, 2008 to March 20, 2010. Defendant's insurer denied coverage and refused to defend Defendant in this Litigation under these policies.

### 3. The Costs of Further Litigation.

22. Because Defendant's insurance policies are the only practical source for the satisfaction of any judgment in the Settlement Class's favor above $200,000.00, it is in the Settlement Class's best interests to avoid future litigation costs that do not relate to obtaining that insurance. Further litigation of the underlying claims against Defendant in this Court, on appeal, or in bankruptcy will be expensive for the Settlement Class and will not move them closer to collecting any money. On the other hand, if this action is settled, the Settlement Class can concentrate the efforts on seeking recovery from Defendant's insurers.

23.     The settlement should be preliminarily approved because it will minimize the inevitable costs of future litigation of this matter.

### 4.     Opposition.

24.     Because notice of the settlement has not yet been sent, any opposition by absent class members is unknown and can only be addressed at the final approval hearing.

### 5.     Absence of Collusion.

25.     The settlement is not the product of collusion. It was reached only after extensive discovery and litigation in the District Court and in the Court of Appeals, and after several mediation sessions. Plaintiffs and their counsel have concluded that the terms and conditions provided for in this Agreement are fair, reasonable, adequate, and in the best interests of the Settlement Class as a means of resolving this litigation.

### 6.     Opinion of Counsel.

26.     Class Counsel believes this settlement is fair, reasonable, and adequate. The Class Counsel has litigated TCPA class actions and the coverage issues arising in these actions since 2003. *See, e.g.*, *Valley Forge*, 860 N.E.2d 307; *Insurance Corp of Hanover v. Shelborne Assoc.*, 905 N.E.2d 976 (Ill. App. 2009); *Eclipse Mfg. Co. v. U.S. Compliance Co.*, 886 N.E.2d 349 (Ill. App. 2007). Under these circumstances, Class Counsel's opinion should be given great weight because of Class Counsel's extensive experiences in dealing with the myriad and complex issues involved in this case.

### 7. Stage of Proceedings and Amount of Discovery.

27. The stage of proceedings and amount of discovery supports preliminary approval. The Settlement Class includes approximately 143,000 persons to whom Defendant sent more than 669,000 facsimiles in 2009. The settlement was reached after extensive written discovery as well as numerous depositions.

### 8. Public Interest.

28. The public interest is best served by ending this case now even though claims against the insurance will have to be litigated before the amount of relief available to the Settlement Class can be determined.

29. Based upon the foregoing, as well as upon the judgment of experienced class counsel, Plaintiffs request that the Court preliminarily approve the proposed settlement.

## III. THE COURT SHOULD APPROVE NOTICE TO THE SETTLEMENT CLASS.

30. The parties propose to issue notice by faxing the Settlement Class Notice to each member of the Settlement Class. A copy of the proposed notice is attached as Exhibit 2 to the attached Agreement.

31. Under federal law, notice of the settlement must satisfy due process. *Maher v. Zapata Corp.*, 714 F.2d 436, 450-453 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F.2d 956, 963 (3d Cir. 1983). The Court is vested with wide discretion both as to the manner in which notice is given and the form that notice is to take. 7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005).

32. Rule 23 (C) (2) (B) requires that the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Here, the notice will be sent to the class members using their known contact information.

33. Also, the notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c) (3)." Here, the proposed notice satisfies all of these requirements.

34. Finally, Rule 23 (e) (1) provides that notice should be given in "a reasonable manner." Here, the parties have agreed to a reasonable manner of notice; fax to the fax numbers in question.

35. In conclusion, the proposed notice meets the legal standards for appropriate notice and satisfies Rule 23. Therefore, the Court should approve the proposed notice and authorize its dissemination to the Settlement Class.

IV. **THE COURT SHOULD SCHEDULE A FINAL FAIRNESS HEARING.**

36. Finally, Plaintiffs request that the Court schedule a final fairness hearing to determine whether the settlement should be finally approved. A

proposed Final Approval of Agreement and Judgment is attached as Exhibit 3 to the attached Agreement.

## V. CONCLUSION.

WHEREFORE, Plaintiffs, CE Design, Ltd., Paldo Sign and Display Co., and Addison Automatics, Inc., respectfully request that this Court enter a preliminary approval order in the form attached as Exhibit 1 to the Agreement, granting preliminary approval of the proposed settlement, directing that the members of the Settlement Class be notified about the proposed settlement in the form and manner agreed by the parties (Exhibit 2 to the Agreement), and setting dates for opt-outs, objections, and a final approval hearing.

Respectfully submitted,

/s Phillip A. Bock
Counsel for Plaintiffs

| | |
|---|---|
| Brian J. Wanca | Phillip A. Bock |
| David Oppenheim | Tod A. Lewis |
| Ryan M. Kelly | James M. Smith |
| ANDERSON + WANCA | BOCK & HATCH, LLC. |
| 3701 Algonquin Road, Suite 760 | 134 N. La Salle Street, Suite 1000 |
| Rolling Meadows, IL 60008 | Chicago, IL 60602 |
| Telephone: 847/368-1500 | Telephone: 312/658-5500 |

14