IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CE DESIGN LTD., PALDO SIGN AND DISPLAY COMPANY, and ADDISON AUTOMATICS, INC., Illinois corporations, Individually and as the representatives of a Class of similarly situated persons,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>KING SUPPLY COMPANY, LLC d/b/a ARCHITECTURAL METALS,<br><br>　　　　　Defendant. | Case No. 09-CV-2057<br>Magistrate Judge Schenkier |

## MEMORANDUM OF LAW IN SUPPORT OF VALLEY FORGE INSURANCE COMPANY, NATIONAL FIRE INSURANCE COMPANY OF HARTFORD AND CONTINENTAL CASUALTY COMPANY'S MOTION TO INTERVENE AND STAY

COME NOW proposed Intervenors, Valley Forge Insurance Company ("Valley Forge"), National Fire Insurance Company of Hartford ("National Fire"), and Continental Casualty Company ("Continental") (collectively, "Intervenors"), by and through counsel, and respectfully submit this Memorandum of Law in support of their joint Motion to Intervene under Rule 24 of the Federal Rules of Civil Procedure and to stay this action pending resolution of a related coverage litigation, and state:

### PRELIMINARY STATEMENT

Intervenors recently discovered that their insured, King Supply Company, L.L.C. d/b/a King Architectural Metals ("King Supply"), entered into a settlement agreement with CE Design, Ltd. ("CE Design"), Paldo Sign and Display Co. ("Paldo"), and Addison Automatics, Inc. ("Addison"), in which King Supply admitted to sending over 669,000 unsolicited advertisements by facsimile in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"),

1

accepted liability in the amount of $20 million, and purported to assign all rights under insurance policies issued by Intervenors to King Supply in exchange for a covenant not to execute against King Supply's own assets. Intervenors became aware of these developments despite the fact that the settlement agreement expressly prohibited King Supply from disclosing the settlement to Intervenors. Upon learning of the existence of this secret and collusive deal, Intervenors promptly initiated a declaratory judgment lawsuit against King Supply and the underlying claimants in the state of King Supply's principal place of business, Texas, to determine whether there is any insurance coverage for the proposed class action settlement.

Valley Forge, National Fire, and Continental now seek to intervene in this lawsuit and request a stay of any further proceedings pending a determination of the coverage issues, including the reasonableness of the settlement, to be made in the declaratory judgment litigation. Such a stay is necessary to permit Intervenors to protect their significant interests implicated by this settlement—which are unrepresented by the existing parties to this lawsuit and which will be irreparably impaired if this collusive settlement arrangement is permitted to proceed in its current form.

Under Federal Rule of Civil Procedure 24, Valley Forge, National Fire, and Continental are entitled to intervene in this action as of right or by way of permissive intervention. Intervenors promptly filed this motion upon learning of King Supply's concession of liability and agreement to enter into a consent judgment in the amount of $20 million. Given the structure of the settlement agreement, King Supply's insurance assets, including the policies issued by Intervenors, serve as the settlement class' exclusive source of recovery for 99% of the settlement sum. King Supply has protected its own interests by way of the covenant not to execute and, therefore, has (and had) no incentive whatsoever to contest the reasonableness of

the $20 million settlement amount. Indeed, the existing parties each benefit tremendously from the purported settlement: the claimants obtain a $20 million consent judgment without having to establish the requirements for class certification or prove liability or damages, and King Supply extracts itself from this litigation with its liability capped at $200,000.

In short, it appears that the claimants and King Supply have achieved a collusive "sweetheart" deal in which neither party has anything to lose—all at the expense of Intervenors. Because the parties undoubtedly have placed Intervenors' financial interests at the forefront of the settlement agreement, Intervenors should be permitted to intervene in this action and a stay should be granted such that the coverage issues can be determined within the context of the declaratory judgment litigation prior to a final fairness hearing on the settlement. In the alternative, if this Court should not be inclined to stay this action, then Intervenors should be permitted to challenge the reasonableness and propriety of the settlement within the context of this litigation prior to the final approval hearing. Intervention is particularly warranted given the Seventh Circuit's recent concerns regarding CE Design's counsel's efforts in seeking similar arrangements in other TCPA actions in this District.

## FACTUAL BACKGROUND

### A. THE TCPA ACTION

On or about February 26, 2009, CE Design filed this putative class action lawsuit alleging that King Supply transmitted advertisements by facsimile in violation of the TCPA (the "TCPA Action").[1] The TCPA Action was removed from the Circuit Court of Cook County, Illinois to this Court. (Docket Entry 1.)

---

[1] Counts II (common law conversion) and III (violation of the Illinois Consumer Fraud and Deceptive Business Practices Act) of the original complaint were dismissed with prejudice. (DE 25.)

A class was certified on December 13, 2010, with CE Design briefly appointed as class representative. (Docket Entry 91; 92.) Pursuant to an appeal of class certification under Rule 23, the United States Court of Appeals for the Seventh Circuit questioned the credibility of CE Design's President, vacated class certification, and remanded the case for a determination of whether CE Design could serve as an adequate class representative. (See generally Docket Entry 135.) The Seventh Circuit found that "serious doubts concerning the truthfulness" of CE Design's sworn testimony were material to the issue of whether CE Design could serve as class representative. (Id. at 13) Specifically, the Seventh Circuit explained that CE Design may have *consented* to receive advertisements by facsimile such that King Supply potentially would have a valid defense to CE Design's alleged violation of the TCPA. (Id.) Due to this and other defects in the original complaint, Paldo and Addison were added as plaintiffs by way of a "First Amended Complaint." (Docket Entry 100.)

The matter was settled by the CE Design, Paldo, Addison, and King Supply, with a stipulated agreement to a broad settlement class. (Docket Entry 129-1.) On September 27, 2011, CE Design filed a motion seeking preliminary approval of the settlement agreement entered into by CE Design and King Supply ("Settlement"). Pursuant to the Settlement, CE Design and King Supply stipulated to the following settlement class:

> All persons who were sent any telephone facsimile message in 2009 by King Architectural Metals but who did not directly request that King Architectural Metals send the specific facsimile they received.

The parties stipulated as part of the Settlement that the settlement class includes approximately 143,000 persons to whom King Supply allegedly sent 669,000 unsolicited advertisements by facsimile. Under the Settlement, King Supply agreed to move this Court to enter judgment in favor of the settlement class and against King Supply in the amount of $20 million (the "Consent

4

Judgment"). The Consent Judgment would be allocated according to the following formula: (1) $15,650,415 for TCPA claims, (2) $3,349,585 for conversion claims, and (3) $1 million for all other claims.[2] King Supply covenanted not to oppose entry of the Consent Judgment.

The Settlement contains a covenant not to execute the Consent Judgment against King Supply except with respect to the proceeds of King Supply's insurance policies, including the policies issued by Intervenors, and purports to assign to the settlement class all of King Supply's claims and rights against Intervenors. King Supply also agreed to insert the following provision to maintain the secrecy of the Settlement from Intervenors:

> King will not notify its insurers about this settlement. . . . King agrees that it will not file any action against its insurers concerning Plaintiffs' claims less than 2 years after entry of the Final Approval Order by the district court. Upon written request from Plaintiffs' attorneys, King agrees to waive personal jurisdiction in any action filed to recover the Judgment.

On September 30, 2011, this Court issued an Order Preliminarily Approving the Class Action Settlement and Approving the Class Notice, and scheduled a fairness hearing for January 13, 2012. (Docket Entry 132.) National Fire, Valley Forge, and Continental subsequently learned of the September 30, 2011 Order and timely filed this Motion to Intervene to protects their rights herein.

## B. PURSUIT OF INSURANCE COVERAGE FOR THE TCPA ACTION

Valley Forge issued a commercial general liability policy to King Supply, policy number C 2088871433, in effect from March 20, 2008 to March 20, 2009 ("Valley Forge Policy"). National Fire issued a commercial general liability policy to King Supply, policy number C 2088871433, in effect from March 20, 2009 to March 20, 2010 ("National Fire Policy").

---

[2] To circumvent an order of this Court dismissing Counts II and III of the original complaint, see DE 25, the parties stipulated, "Plaintiff will file a Second Amended Complaint concurrently with their motion for preliminary approval that pleads the state law conversion claim that was previously dismissed by the Court in an interlocutory order."

5

Continental issued a commercial umbrella policy to King Supply, policy number C 2088871450, in effect for consecutive annual periods from March 20, 2008 to March 20, 2010 ("Continental Policy"). The Valley Forge Policy, National Fire Policy, and Continental Policy are referred to collectively as "Policies."

King Supply tendered the TCPA Action to Intervenors for defense and indemnification. After careful review and analysis of the allegations in the context of insurance coverage, and by correspondence dated April 30, 2009, Intervenors disclaimed coverage to King Supply based upon the failure to satisfy the "Insuring Agreements" of the Policies and the application of various exclusions, terms, and conditions—including an exclusion that broadly applies to any liability incurred by King Supply under the TCPA.

On November 15, 2011, Intervenors filed a declaratory judgment action in the 160th Judicial District Court for Dallas County, Texas, which is where King Supply has its principal place of business and where the Policies were issued ("Coverage Action"). The Coverage Action seeks a declaration that Intervenors have no duty to defend or to indemnify King Supply in connection with the TCPA Action and a finding that the Settlement was not reasonable and was not made in good faith.

## LEGAL ARGUMENT

### I. VALLEY FORGE, NATIONAL FIRE AND CONTINENTAL ARE ENTITLED TO INTERVENE TO PROTECT THEIR SIGNIFICANT AND UNREPRESENTED INTERESTS AT STAKE IN THIS LAWSUIT

Rule 24 of the Federal Rules of Civil Procedure provides two means for intervention in pending actions: intervention as of right under Rule 24(a) and permissive intervention under Rule 24(b). Rule 24 provides, in pertinent part:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:

       \*   \*   \*

 (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

       \*   \*   \*

(b) Permissive Intervention.

 (1) In General. On timely motion, the court may permit anyone to intervene who:

  (A) is given a conditional right to intervene by a federal statute; or

  (B) has a claim or defense that shares with the main action a common question of law or fact.

       \*   \*   \*

 (3) Delay or Prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

FED. R. CIV. P. 24(a)-(b). As discussed below, Valley Forge, National Fire, and Continental seek intervention as of right under Rule 24(a)(2) or, in the alternative, permissive intervention under Rule 24(b)(2).

## II. VALLEY FORGE, NATIONAL FIRE AND CONTINENTAL ARE ENTITLED TO INTERVENE AS OF RIGHT

Under Rule 24(a)(2), "[a] party may seek intervention as of right if the party has 'an interest' and is 'so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by the existing parties.'" Ligas ex rel. Foster v. Maram, 478 F.3d 771, 773 (7th Cir.

2007) (quoting Fed. R. Civ. P. 24(a)(2)). To prevail on a motion to intervene under Rule 24(a), the moving party must meet the following criteria:

1. The motion to intervene must be made timely;

2. The proposed intervenor must have a legally protected interest related to the subject matter of the lawsuit;

3. The disposition of the lawsuit must threaten to impair that interest; and

4. The proposed intervenor's interest must not be adequately represented by the existing parties.

Id.

The test for timeliness is primarily one of reasonableness, Reich v. ABC/York–Estes Corp., 64 F.3d 316, 321 (7th Cir. 1995), under which the following four factors must be weighed: (1) the length of time that the intervenor knew or should have known of its interest in the lawsuit; (2) the prejudice to the original party caused by the delay; (3) the resulting prejudice to the intervenor if the motion is denied; and (4) any unusual circumstances. See People Who Care v. Rockford Bd. of Educ., 68 F.3d 172, 175 (7th Cir. 1995). There is no precise time limit under the timeliness test, which is designed primarily to ensure that potential intervenors are diligent "in learning of a suit that might affect their rights," and that they act "reasonably promptly" in moving to protect those rights. Nissei Sangyo Am., Ltd. v. United States, 31 F.3d 435, 438-39 (7th Cir. 1994).

Under the second and third prongs of Rule 24(a)(2), the Seventh Circuit has held that the interest must be a "'direct, significant, legally protectable' one." Sec. Ins. Co. of Hartford v. Schipporeit, Inc., 69 F.3d 1377, 1380 (7th Cir. 1995) (quoting Am. Nat'l Bank, 865 F.2d at 146). In evaluating the proposed intervenor's interest, this court focuses "on the issues to be resolved by the litigation and whether the potential intervenor has an interest in those issues." Reich, 64 F.3d at 322. This is a "highly fact-specific determination, making comparison to other cases of

8

limited value." Sec. Ins. Co. of Hartford, 69 F.3d at 1381. The goal of the interest requirement of Rule 24(a)(2) is "to dispose of lawsuits by involving as many concerned parties as is compatible with efficiency and due process." United States v. Am. Inst. of Real Estate Appraisers of Nat'l Ass'n of Realtors, 442 F. Supp. 1072, 1080 (N.D. Ill. 1977).

Under the fourth prong of Rule 24(a)(2), the Seventh Circuit has held that the burden of establishing "lack of adequate representation is minimal." See Meridian Homes Corp. v. Nicholas W. Prassas & Co., 683 F.2d 201, 205 (7th Cir. 1982). Therefore, "the proposed intervenor should be treated as the best judge of whether the existing parties adequately represent his or her interests." Michigan v. U.S. Army Corps of Eng'rs, No. 10-cv-4457, 2010 WL 3324698, at *6 (N.D. Ill. Aug. 20, 2010) (internal quotation omitted).

Here, Intervenors have satisfied each element for intervention as of right. First, this motion to intervene was made timely once Intervenors learned that their interests were being substantially jeopardized and impaired in connection with the TCPA Action. In particular, it was not until September 27, 2011 that the claimants filed a motion for preliminary approval of the Settlement executed by the claimants and King Supply. Prior to this time, class certification was being disputed by the parties on appeal before the Seventh Circuit, and King Supply was vigorously defending the TCPA Action. On September 30, 2011, this Court issued an Order granting preliminary approval of the Settlement. This Court's September 30, 2011 Order was Intervenors' first notice that King Supply sought to admit liability and damages for a $20 million Consent Judgment and to assign all rights under the Policies to the claimants and the settlement class.

Second, Intervenors have substantial interests in the subject matter of this lawsuit. Pursuant to the Settlement, King Supply stipulated that it sent 669,000 unsolicited

9

advertisements by facsimile to approximately 143,000 members of the settlement class and that the class is entitled to a Consent Judgment in the amount of $20 million. The Settlement makes clear that the predominant source of recovery for the Consent Judgment is King Supply's insurance policies, including the Policies issued by Intervenors. Therefore, Intervenors' interests are "direct, significant, legally protectable one[s]," and intervention in this lawsuit is appropriate as of right. See Sec. Ins. Co. of Hartford, 69 F. 3d at 1380-81.

Third and fourth, the disposition of this case without Intervenors' participation would significantly impede their ability to protect their interests under the Policies because no existing party to this dispute adequately represents Intervenors' interests. Valley Forge, National Fire, and Continental denied coverage to King Supply in connection with the TCPA Action. Nevertheless, the claimants and King Supply seek to fund $19,800,000 of the $20 million settlement amount from King Supply's insurance policies, including the Policies.

Because King Supply already has stipulated to the sizeable Consent Judgment and fully protected its own financial interests by way of the covenant not to execute, Intervenors' interests have been left completely exposed and unrepresented in this action. In other words, by way of the Settlement, King Supply's exposure is capped at $200,000, although Intervenors face potential exposure in the millions of dollars. As a result, if this lawsuit were not stayed pending the coverage litigation, or if Intervenors were not otherwise permitted to intervene and challenge the reasonableness of this collusive Settlement prior to final approval, then Intervenors' rights would be significantly and irreparably impaired.

### III. VALLEY FORGE, NATIONAL FIRE AND CONTINENTAL HAVE SATISFIED THE REQUIREMENTS FOR PERMISSIVE INTERVENTION

Although Intervenors assert that they have established the requirements for intervention as of right, Rule 24(b) also provides a proper basis for permissive intervention. Under Rule

10

24(b), permissive intervention is appropriate where the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); see also Flying J, Inc. v. J.B. Van Hollen, 578 F.3d 569, 573 (7th Cir. 2009). As with Rule 24(a), Rule 24(b) requires any motion to intervene to be made timely, Sokaogon Chippewa County v. Babbitt, 214 F.3d 941, 949 (7th Cir. 2000), and for the Court to "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3). Permissive intervention is wholly within the discretion of the Court. Keith v. Daley, 764 F. 2d 1265, 1272 (7th Cir. 1985).

Here, Intervenors satisfy the requirements for permissive intervention. First and foremost, Intervenors' application is timely. Given that the Settlement expressly prohibits King Supply from advising Intervenors of the Settlement, Intervenors were left to their own devices to discover it. As a result, Intervenors made this motion promptly after learning about this Court's September 30, 2011 Order granting preliminary approval of the Settlement. Therefore, Intervenors acted diligently and "reasonable promptly" in protecting their rights.

Second, Intervenors' coverage defenses involve common questions of fact and law with the TCPA Action. These issues include whether the Settlement's structure and amount are reasonable and made in good faith and whether King Supply is legally obligated to pay to the claimants and the settlement class any of the alleged damages. See, e.g., VC Group Corp. v. HMA South County, L.L.C., No. ED 96827, slip op. (Mo. Ct. App. Oct. 18, 2011) (per curium) (denying class certification in a separate TCPA class action lawsuit brought by the claimants' counsel on the basis that it was impossible for the class representative to prove whether any member of the proposed class actually received one of the defendant's advertisements by facsimile). Notwithstanding the substantive coverage defenses, Intervenors cannot have any

11

obligation to pay for any settlement sum that was not made in good faith and was not determined to have been reasonable based upon a thorough and complete evaluation of the merits. The Settlement achieved by CE Design and King Supply raises serious questions about both of these factors.[3]

Third, intervention would not unduly delay or prejudice the adjudication of the rights of the parties. Indeed, staying this action in deference to the pending coverage litigation would provide greater certainty to the parties and to this Court concerning the reasonableness and recoverability of the Settlement. The coverage litigation likely would be resolved on summary judgment motions and, therefore, would not require a lengthy discovery and trial process. In the alternative, if a stay is not granted, then Intervenors should be given the opportunity to contest the reasonableness of the Settlement in this forum prior to the final fairness hearing—just as any class member or interested party would have the right to do. Because Intervenors have been placed in the crosshairs of the Settlement, they should not be deprived of the opportunity to respond to the Settlement before this Court considers final approval. Therefore, Valley Forge, National Fire, and Continental should be permitted to intervene in this lawsuit.

---

[3] Notably, CE Design's counsel has been involved in numerous TCPA lawsuits and subject to criticism by the Seventh Circuit for their conduct in connection with such suits. See Creative Montessori Learning Ctr. v. Ashford Gear LLC, 662 F.3d 913, 917 (7th Cir. 2011) ("[C]lass counsel have demonstrated a lack of integrity that casts serious doubt on their trustworthiness as representatives of the class."); see generally CE Design Ltd. v. King Architectural Metals, Inc., 637 F.3d 721 (7th Cir. 2011) (decertifying a putative class and questioning legitimacy of class representative selected by CE Design's counsel).

## CONCLUSION

Based upon the foregoing, Valley Forge, National Fire and Continental respectfully request that this Court enter an Order permitting them to intervene in this lawsuit as of right under Rule 24(a) or by way of permissive intervention under Rule 24(b) and granting a stay of this action pending the coverage litigation.

Respectfully submitted,

COLLIAU ELENIUS MURPHY
CARLUCCIO KEENER & MORROW


s/David E. Trainor
David E. Trainor, Esq. (#3124208)
Barrett Breitung, Esq. (#6242572)
Katherine Streicher Arnold, Esq. (#6196855)
333 South Wabash Avenue, 25th Floor
Chicago, IL 60604
(312) 822-6603 (T)
(312) 817-2486 (F)
Email: David.Trainor@cna.com
Email: Barrett.Breitung@cna.com
Email: Katherine.Arnold@cna.com

**OF COUNSEL:**

Christopher R. Carroll, Esq.
Heather E. Simpson, Esq.
**CARROLL, MCNULTY & KULL L.L.C.**
120 Mountain View Boulevard
Basking Ridge, NJ 07920
(908) 848-6300
(908) 848-3610 Facsimile
**COUNSEL FOR PROPOSED INTERVENORS
VALLEY FORGE INSURANCE COMPANY,
NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, AND
CONTINENTAL CASUALTY COMPANY**

Dated: January 3, 2012