IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CE DESIGN LTD., PALDO SIGN AND DISPLAY COMPANY, and ADDISON AUTOMATICS, INC., Illinois corporations, Individually and as the representatives of a Class of similarly situated persons,<br><br>        Plaintiffs,<br><br>v.<br><br>KING SUPPLY COMPANY, LLC d/b/a KING ARCHITECTURAL METALS,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 09-CV-2057<br>  Magistrate Judge Schenkier |

## REPLY IN FURTHER SUPPORT OF VALLEY FORGE INSURANCE COMPANY, NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, AND CONTINENTAL CASUALTY COMPANY'S MOTION TO INTERVENE AND TO STAY

COMES NOW, proposed Intervenors Valley Forge Insurance Company, National Fire Insurance Company of Hartford, and Continental Casualty Company (collectively, "Companies"), by and through counsel, and respectfully submit this Reply Memorandum of Law in support of their Motion to Intervene under Rule 24 of the Federal Rules of Civil Procedure and to stay this action pending resolution of the Companies' coverage action in Texas, and state:

## PRELIMINARY STATEMENT

The Companies are entitled to intervene into this action, as of right or permissively, to protect their unrepresented interests from the significant (and potentially irreparable) prejudice posed by the proposed settlement signed by CE Design Ltd. ("CE Design") and King Supply Company, LLC d/b/a King Architectural Metals, Inc. ("King Supply"). The Companies promptly filed this motion upon learning that their insured, King Supply, conceded liability and agreed to a judgment in the amount of $20 million. Prior to that time, the Companies had no

1

notice that King Supply—which vigorously defended the case and successfully contested certification of a class by CE Design—would surrender its defense by admitting liability and conceding damages in the amount of $20 million. King Supply has protected its own interests by way of the covenant not to execute and, therefore, has (and had) no incentive whatsoever to protect the Companies' interests in defeating liability and reducing any damages payable to the settlement class. Once the Companies learned that their interests were placed into jeopardy by the proposed settlement, they promptly filed this motion to intervene.

Moreover, the Companies have direct and substantial interests in the outcome of this litigation. This Court has recognized that the need to determine the availability of insurance coverage to satisfy a potential judgment constitutes an interest sufficient to justify Rule 24(a) intervention. The Companies did not "abandon" or "waive" any interest in this litigation by contesting their coverage obligations to King Supply. To the contrary, the Companies' interest in this action were placed directly at issue by way of the proposed settlement agreement, whereby King Supply's insurance assets, including the policies issued by the Companies, serve as the settlement class' *exclusive* source of recovery for more than 99% of the settlement sum. Therefore, the Companies (and the class members) have significant interests in whether the proposed settlement agreement should be approved by this Court.

Finally, no party to this dispute would be prejudiced by the Companies' intervention. Far greater prejudice may befall the settlement class if the Companies' intervention is denied. CE Design and King Supply placed the Companies' policies at the forefront of the proposed settlement agreement by premising over 99% of the settlement class' potential recovery upon the availability (or unavailability) of insurance coverage. Simply put, the settlement class has no recovery under the proposed settlement agreement without a determination that coverage exists

2

under any or all of King Supply's insurance policies. Moreover, if the $20 million judgment is approved and entered by this Court, CE Design likely will contest the Companies' ability to challenge the reasonableness of the settlement after the fact in its Texas coverage lawsuit and argue that this Court's ruling is binding and determinative of the issue. Because insurance recovery is at the heart of the proposed settlement agreement, this Court should permit the Companies to intervene, as of right or permissively, and stay the final fairness hearing until such time that a determination of coverage in the Companies' declaratory judgment action pending in Texas can be achieved.

## LEGAL ARGUMENT

## I. THIS MOTION IS TIMELY BECAUSE IT WAS MADE PROMPTLY AFTER THE COMPANIES LEARNED OF KING SUPPLY'S CONCESSION OF LIABILITY AND DAMAGES

CE Design asserts that the Companies' motion to intervene is untimely because they were aware of this lawsuit since early 2009. Nonetheless, it was not until September 30, 2011 that preliminary approval of CE Design and King Supply's secret settlement agreement ("Settlement") was granted by this Court. Indeed, the Settlement expressly stated that King Supply was prohibited from disclosing the Settlement to its insurers. (Docket Entry 129-1 at 8.) Upon subsequently learning of the proposed Settlement between CE Design and King Supply, by way of its own investigation, the Companies moved to intervene. Therefore, the key event that triggered the right to intervene in this matter was the collusive settlement agreement seeking a consent judgment against King Supply in the amount of $20 million. Prior to that time, the Companies' interests were fully represented by way of King Supply's defense against CE Design's claims.

As acknowledged by CE Design, no bright line rule governs the timeliness of a motion to intervene. In determining whether a motion to intervene is timely, courts within the Seventh

Circuit are bound to analyze the facts and circumstances of the case under a standard of reasonableness. <u>Reich v. ABC/York–Estes Corp.</u>, 64 F.3d 316, 321 (7th Cir. 1995); <u>People Who Care v. Rockford Bd. of Educ.</u>, 68 F.3d 172, 175 (7th Cir. 1995); <u>Nissei Sangyo Am., Ltd. v. United States</u>, 31 F.3d 435, 438-39 (7th Cir. 1994). According to the Seventh Circuit, timeliness should be determined by examining whether an intervenor acted reasonably promptly ***upon learning*** that its rights could be impaired. <u>See</u> <u>Reich</u>, 64 F.3d at 321. In <u>Reich</u>, which CE Design concedes is on-point, the Seventh Circuit expressly rejected the argument that timeliness is measured by the date on which the lawsuit was filed. <u>Id.</u>; <u>see also</u> <u>United States v. City of Chicago</u>, 870 F.2d 1256, 1263 (7th Cir. 1989); <u>S. v. Rowe</u>, 759 F.2d 610, 611 (7th Cir. 1985).

Additionally, the mere fact that a lawsuit has been filed and may potentially implicate a third party's interests is not sufficient to satisfy the standards for intervention. In <u>City of Chicago</u>, the Seventh Circuit emphasized that a party must have a reason to believe that its interests actually will be impaired before the clock on filing a motion to intervene begins to run. <u>See</u> <u>City of Chicago</u>, 870 F.2d at 1263. Indeed, the Court stated that the potential intervenor would be "laughed out of court" if it intervened before its interests had become ripe. <u>Id.</u> (permitting intervention eight years after a consent decree was entered).

This is precisely the situation in which the Companies found themselves. Although the Companies knew that this lawsuit was pending, they reasonably believed that King Supply was defending itself against CE Design's claims. Just prior to execution of the proposed Settlement, King Supply had challenged CE Design's efforts to obtain class certification and had prevailed on appeal. Therefore, the Companies had no basis to believe that King Supply would do an about-face and voluntarily agree to an ill-defined settlement class, admit liability, and concede damages in the amount of $20 million to be recovered almost exclusively through insurance

4

assets.  When the Companies discovered the secret and collusive deal that King Supply made with CE Design, which placed the Companies' interests directly at issue, the Companies promptly filed a petition to intervene.  This is all that is required under Seventh Circuit precedent to reasonably comply with the timeliness requirement of Rule 24(a)(2).  City of Chicago, 870 F.2d at 1263; see also Reich, 64 F.3d at 322; Rowe, 759 F.2d at 612.

At the recent fairness hearing on January 13, 2012, Magistrate Judge Schenkier inquired about the length of time it took the Companies to seek intervention in this action.  As noted by the Court, the Companies filed a declaratory judgment action in Texas state court on November 15, 2011 and subsequently sought to intervene in this case on January 6, 2012.  Although, admittedly, there was a brief gap between these two events, it was imperative that the Companies instituted an insurance coverage action before seeking to intervene and stay this action in favor of the coverage litigation.  Upon learning of the Settlement, the Companies acted swiftly to investigate the terms of the Settlement and evaluate their proposed course of action in responding to CE Design and King Supply's efforts to secretly foist a $20 million consent judgment upon then.  Accordingly, the Companies' decision to seek intervention into this action within months of discovering the preliminary approval of the parties' secret Settlement was reasonable.

In addition, and contrary to CE Design's assertions, the existence of a proposed settlement does not automatically render the Companies' intervention untimely.[1]  In City of Chicago, the Seventh Circuit permitted intervention even where a consent decree had been

---

[1] CE Design cited numerous employment-related discrimination cases in support of its position and, tellingly, none of them concerned a potentially collusive settlement.  See United States v. City of Chicago, 908 F.2d 197, 199 (7th Cir. 1990) (denying intervention as of right and permissibly in an employment-related discrimination litigation that had been ongoing for fifteen years prior to intervention and that had manifested in a consent decree approved by the district court following a fairness hearing); Thomas v. U.S. Dep't of Hous. & Urban Dev., No-05-cv-4121, 2006 WL 1886178 (N.D. Ill. July 6, 2006) (denying intervention because the intervenors' claims were not factually related to the litigation and untimely, being filed more than eleven months after the district court entered an order dispositive of an issue relating to intervention); E.E.O.C. v. U. Air Lines, Inc., No. 73-cv-972, 1995 WL 103658 (N.D. Ill. Mar. 3, 1995) (denying intervention as of right and permissibly in an employment-related discrimination litigation where the plaintiffs' claims had been denied in a previous litigation).

entered *eight years* earlier. <u>See</u> 870 F.2d at 1263. A similar result occurred in <u>South v. Rowe</u>, 759 F.2d 610, 611 (7th Cir. 1985), where the Seventh Circuit affirmed the district court's grant of intervention *two years* after a consent decree was entered by the court. Therefore, there is no bright line rule that a pending, non-final, proposed settlement between the parties precludes a finding of timeliness—especially where the reasonableness of the proposed settlement is in issue.

Based upon the foregoing, the Companies' motion to intervene, filed shortly after this Court granted preliminary approval of a settlement that contemplated potential recovery under the insurance policies, was timely.

## II. THE COMPANIES HAVE A DIRECT AND SUBSTANTIAL INTEREST IN THIS LAWSUIT BY VIRTUE OF THE PROPOSED SETTLEMENT

CE Design next argues that the Companies do not have a "direct and concrete" interest in the subject matter of this lawsuit to satisfy the requirements for intervention or that they "waived" or "abandoned" their interests in this lawsuit by disputing coverage. Courts routinely reject these types of arguments because the existence of a coverage dispute does not give rise to an abandonment or waiver of an insurer's interest in an underlying case. <u>See, e.g.</u>, <u>United States v. Thorson</u>, 219 F.R.D. 623, 628 (W.D. Wis. 2003) (granting an insurer's motion to intervene in an underlying lawsuit for the purpose of staying the lawsuit pending a determination of coverage); <u>Int'l Paper Co. v. City of Tomah</u>, No. 00–C–539–C, 2000 WL 34230089 (W.D. Wis. Nov. 30, 2000) (same); <u>see</u> <u>also</u> <u>Maxum Indem. Co. Sec. Ins. Co. of Hartford v. Eclipse Mfg. Co.</u>, No. 06-CV-4946, 2008 WL 4831734 (N.D. Ill. Nov. 5, 2008) (permitting intervention in a coverage action arising out of a TCPA settlement because the insurer had a substantial and unrepresented interest).

By arguing that the Companies do not currently possess a direct interest in this matter, CE Design talks out of both sides of its mouth. In the first instance, CE Design asserts that the

6

Companies' motion to intervene is untimely because it should have sought to intervene earlier, prior to their policies becoming the target of the Settlement. Now that the Settlement has been entered, however, CE Design contends that the Companies do not possess a direct and substantial interest in the outcome of this suit. CE Design cannot have its cake and eat it, too. More importantly, however, the Companies have direct and substantial interests in the resolution of this lawsuit because their policy proceeds have been identified specifically in the proposed Settlement as the principal source of recovery of for the settlement class.

The Seventh Circuit has noted that the interest requirement under Rule 24 "has never been defined with particular precision." Sec. Ins. Co. of Hartford v. Shipporeit, Inc., 69 F.3d 1377, 1380 (7th Cir. 1995). The required interest "is something more than a mere 'betting' interest . . . but less than a property right." Id. at 1480-81. In other words, the interest must be direct and substantial such that the intervenor could maintain a separate lawsuit to enforce and protect the interest. Keith v. Daley, 764 F.2d 1265, 1268 (7th Cir. 1985).

Courts consistently hold that an insurer's interest in determining the existence or nonexistence of coverage for claims being asserted against an insured is both direct and substantial. See Schipporeit, Inc., 69 F.3d at 1380 (permitting intervention as of right in a declaratory judgment lawsuit because insurance coverage would be the primary means of recovery against the insured); Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 113 F.R.D. 532, 534 (N.D. Ill. 1986) (permitting intervention as of right in a declaratory judgment lawsuit because insurance coverage would be the primary means of recovery for an assignee of insured); Maxum Indem. Co. Sec. Ins. Co. of Hartford v. Eclipse Mfg. Co., No. 06-CV-4946, 2008 WL 4831734 (N.D. Ill. Nov. 5, 2008) (permitting intervention as of right in a declaratory judgment lawsuit because the existence or nonexistence of insurance coverage was more than a betting interest);

7

see also Hagen v. Van's Lumber & Custom Builders Inc., No. 06-C-122, 2006 WL 3404772 (E.D. Wis. Nov. 22, 2006) (permitting an insurer intervention as of right in an underlying litigation for the purposes of pursuing declaratory relief because its interest in the litigation, although contingent, was direct and substantial).

CE Design's sole authority for the argument that insurance recovery is merely a "betting" interest, Chicago Imports, Inc. v. American States Insurance Co., No. 09-C-2885, 2010 WL 3385539 (N.D. Ill. Aug. 24, 2010), does not even concern intervention by the parties to the insurance contract—i.e., the insurer and the insured—or the insured's putative assignee. Therefore, this Court should acknowledge the generally-accepted proposition that the existence or nonexistence of insurance coverage for claims being asserted against an insured constitutes an interest sufficient to justify intervention as of right. See In re Discovery Zone Sec. Litig., 181 F.R.D. 582, 593 (N.D. Ill. 1998) ("The desire to secure insurance coverage to satisfy a potential judgment against a legal adversary is a sufficient interest for Rule 24(a) intervention.").

Here, the unique facts of this case give rise to direct and substantial interests for the Companies. Both CE Design and King Supply contend that the Companies are required to fund the lion's share of the proposed Settlement. Even assuming, as CE Design concedes in its brief, that the Companies will have the opportunity to challenge the reasonableness of any final settlement in the coverage action, it would be inefficient—and unfair to the settlement class—to approve a settlement in this Court only to later re-litigate the reasonableness of the Settlement (and the potential for coverage) in another lawsuit. If there were no insurance recovery, then, practically speaking, there would be no recovery for the settlement class. These facts alone give rise to a sufficient relationship with this litigation that justifies intervention.

In sum, the Companies have a direct and concrete interest in this matter by virtue of the insurance policies that both CE Design and King Supply allege are the source of recovery for over 99% of the settlement amount. Having identified the proceeds of the policies as the principal source of recovery under their Settlement, CE Design and King Supply cannot now argue that the Companies do not have a direct and substantial interest in this litigation. Therefore, the Companies have satisfied the requirement of establishing an interest justifying intervention—either as of right or permissively.[2]

## III. THE PARTIES WOULD NOT BE PREJUDICED BY THE COMPANIES' INTERVENTION

CE Design contends that permitting the Companies leave to intervene at this time would result in delay and prejudice to the existing parties because this case is "within sight of the terminal." Nothing could be further from the truth. To the contrary, due to the manner in which the parties have structured the proposed Settlement, this litigation has barely left the station. Although King Supply attempted to admit to liability and damages in the amount of $20 million, the dispute over whether King Supply's insurers have any obligation to fund the collusive Settlement and consent judgment has just begun. The proposed Settlement itself envisions additional litigation—outside the jurisdiction of this Court—to determine whether King Supply's insurers are liable to fund the settlement amount. Without insurance coverage, the settlement class has no (or extremely limited) recovery. Fairness to the settlement class is the paramount interest of this court. See In re AT&T Mobility Wireless Data Serv. Sales Litig., 270 F.R.D. 330, 346 (N.D. Ill. 2010). Therefore, permitting the Companies to intervene and stay the case at this time would not delay the ultimate adjudication of the class members' rights—to the contrary,

---

[2] Where intervention as of right is justified under Rule 26(a)(2), no independent jurisdictional ground is required because the claim falls within the ancillary jurisdiction of the Court. See 7C Wright, Miller & Kane, Fed. Prac. & Procedure: Civil 2d § 1917 at 477 (1986); see also Hagen v. Van's Lumber & Custom Builders Inc., No. 06-C-122, 2006 WL 3404772 (E.D. Wis. Nov. 22, 2006).

it would permit the parties an opportunity to efficiently resolve the critical coverage issues prior to final approval of the settlement.

The Seventh Circuit has permitted third parties to intervene in lawsuits even where the existing parties had expended time and money in developing a settlement. See City of Chicago, 870 F.2d at 1263 (affirming leave to intervene where the proposed intervenors moved for intervention eight years after a consent decree was entered by the Court in a civil rights litigation); Rowe, 759 F.2d at 611 (affirming leave to intervene where the proposed intervenors moved for intervention two years after a consent decree was entered by the Court in a civil rights litigation). Moreover, this Court has permitted "limited" intervention for the purposes of challenging the reasonableness of class action lawsuits even though the parties reached a settlement-in-principal. See In re Discovery Zone Sec. Litig., 181 F.R.D. at 601 (permitting limited intervention for the purposes of participating in settlement negotiations, appearing at a fairness hearing on a proposed settlement, and appealing any settlement order entered by the Court). Therefore, the fact that the parties may have proposed a settlement for the Court's consideration is not dispositive of the prejudice issue.

Moreover, and as noted above, the interests of the settlement class may be prejudiced if the Companies are *not* permitted to intervene in this action. In the context of a class action lawsuit, this Court has a duty to put the parties to their proofs regarding the fairness and reasonableness of the proposed settlement. In other words, this Court must evaluate, among other things, (1) King Supply's ability to pay and (2) any collusion between the parties. See, e.g., Am. Civil Liberties Union of Ill. v. U.S. Gen. Serv. Admin., 235 F. Supp. 2d 816, 818 (N.D. Ill. 2002). The Court also must consider whether the settlement is reasonable compromise of contested issues or a one-sided victory. Id.

Here, the Companies' intervention in this lawsuit directly concerns both King Supply's ability to pay and the potential collusion between the parties. Specifically, King Supply's ability to pay 99% of the settlement amount hinges upon the recovery of insurance money from the Companies. If there is no coverage available under King Supply's insurance policies, there may be no ultimate recovery for the settlement class. Therefore, the proposed Settlement has all of the trappings of collusive deal that may ultimately be to the detriment of the settlement class.

By moving to intervene, the Companies ask this Court to allow a legal determination of the coverage issues under the policies to be rendered prior to final approval of the proposed Settlement. As noted, CE Design admits that a determination of coverage and whether the settlement is reasonable and negotiated in good faith are proper subjects of litigation among the parties. By seeking to intervene, the Companies are not putting their interests above their insured's or seeking to "scrap" the Settlement and force the parties to start over in this litigation. The Companies merely are requesting that the critical aspect of the proposed Settlement— insurance proceeds—be resolved at the outset such that the parties, and this Court, will be able to assess the reasonableness of the settlement in proper context. CE Design has no basis to delay a determination of the coverage issues at this time—other than its desire to obtain an $20 million consent judgment without any objection from King Supply.

Although the Companies' interests would be prejudiced if they are not permitted to intervene, no party would be prejudiced by granting the intervention and staying the final fairness hearing until the coverage issues are determined in the Texas action. Because the proposed Settlement is premised almost exclusively upon insurance recovery, there will be no true evaluation of the reasonableness of the settlement without first resolving the coverage dispute. Therefore, the Companies' motion to intervene for the limited purposes of challenging

11

the reasonableness of the proposed Settlement and staying final approval until resolution of the coverage issues should be granted.

## IV. IF INTERVENTION AND A STAY ARE DENIED, CE DESIGN LIKELY WILL CONTEST THE COMPANIES' RIGHT TO LATER CHALLENGE THE REASONABLENESS OF THE SETTLEMENT

Magistrate Judge Schenkier also inquired as to the relevant choice of law governing the determination of the coverage issues and the reasonableness of the settlement and whether the Companies' rights would be impacted by a denial of the motion to intervene/stay. Although CE Design asserts that Illinois applies, the Companies assert that Texas substantive law controls a determination of the parties' respective rights and obligations under the policies. In particular, King Supply is a Texas entity with its principal place of business within the State of Texas. The policies were negotiated, issued, and delivered within the State of Texas, and the policies insured risks within the State of Texas. Although Texas courts generally adhere to the "most significant relationship" test to determine the relevant choice of law for contract disputes, Article 21.42 of the Texas Insurance Code expressly provides that insurance policies issued to citizens of Texas will be governed by Texas law. TEX. INS. CODE Art. 21.42 (1989); Duncan v. Cessna Aircraft Co., 665 S.W.2d 414 (Tex. 1984). Thus, pursuant to both the statute and the most significant relationship test, Texas substantive law governs the parties' rights and obligations under the policy. The fact that the underlying Settlement states it is governed by Illinois law is of no relevance to the law applicable to the Companies' policies.

As noted by CE Design in its opposition, under Texas law, there is conflicting case law as to whether an insurer who breaches its duty to defend may subsequently contest the reasonableness of an underlying settlement or consent judgment after it has been entered. Compare Evanston Ins. Co. v. ATOFINA Petrochems., Inc., 256 S.W.3d 660, 671 (Tex. 2008) ("[I]f an insurer wrongfully denies coverage and its insured then enters into an agreed judgment,

the insurer is barred from challenging the reasonableness of the settlement amount.") <u>with</u> <u>McGinnis v. Union Pac. R.R. Co.</u>, 612 F. Supp. 2d 776, 811 (S.D. Tex. 2009) ("[A]n insurer who wrongfully fails to defend its insured is liable for any damages assessed against the insured, up to the policy limits, subject only to the condition that any settlement be reasonable. The insured must demonstrate only that, in settling, his conduct conformed to the standard of a prudent uninsured.") and <u>Rhodes v. Chicago Ins. Co.</u>, 719 F.2d 116, 120 (5th Cir. 1983) (same).

The Companies are confident that the Texas court will adhere to the view that permits an insurer to contest reasonableness of an underlying settlement and, in any event, will determine that the Companies had no duty to defend or indemnify King Supply in connection with this action. However, in the very unlikely circumstance that the Texas court concludes the Companies *did* owe a duty to defend King Supply, the Companies anticipate that CE Design will object to the Companies' ability to challenge reasonableness at that time (after the $20 million judgment already has been entered) and assert that this Court's approval of the Settlement is final and binding upon the Companies. Indeed, counsel for CE Design has taken that very position in similar coverage litigation arising out of TCPA claims:

> Stonecrafters argues that, because [the insurer] wrongfully refused to defend the action and the trial court determined in the settlement judgment, based upon the evidence in the record and statements made in open court, that (1) the settlement was made in reasonable anticipation of liability; (2) the settlement amount was fair and reasonable; (3) [the insured's] decision to settle conformed to the standard of a prudent uninsured; and (4) the agreed damages amount was what a reasonably prudent person in [the insured's] position would have settled for on the merits of the claims in this litigation, [the insurer] is bound by the judgment thereafter entered against the insured.

<u>Stonecrafters, Inc. v. Wholesale Life Ins. Brokerage</u>, 915 N.E.2d 51, 60 (Ill. App. Ct. 2009) (internal punctuation omitted). The Companies seek to intervene in this action to avoid that very argument being raised by CE Design in the coverage litigation.

Accordingly, this Court should grant the Companies' motion to intervene and stay the final fairness hearing on the Settlement until such time that the coverage issues can be litigated in the Texas action. In the unlikely event that King Supply is entitled to coverage under the policies, the parties can come back to this Court to conduct a fairness hearing and determine whether the Settlement was in fact reasonable. Accordingly, to ensure that the Companies are not deprived of the ability to contest the reasonableness of the settlement, it is critical that this Court stay the final fairness hearing until the coverage issues are resolved.

**V.    THE COMPANIES CURED ANY DEFECT IN THEIR MOTION BY FILING A PROPOSED PLEADING**

When a party does not file a proposed pleading along with its motion to intervene, the defect is fully curable by filing the proposed pleading shortly thereafter. See Shevlin v. Schewe, 809 F.2d 447, 450 (7th Cir. 1987) ("[T]he failure was rectified when the necessary pleading was filed shortly thereafter."). Here, the Companies cured any defect in their motion by filing a proposed pleading within a reasonable amount of time. Specifically, the Companies now file their proposed intervenor complaint as Exhibit A to reply brief, prior to any ruling upon the motion to intervene. Therefore, the Companies have complied with the requirements of Rule 24(c).

## CONCLUSION

Based upon the foregoing, the Companies respectfully request that this Court enter an Order permitting the Companies leave to intervene in this lawsuit as of right under Rule 24(a) or by way of permissive intervention under Rule 24(b) and granting a stay of this action pending resolution of the coverage litigation in the Texas action.

Respectfully submitted,

CARROLL MCNULTY & KULL LLC

_s/ Christopher R. Carroll__ _____
Christopher R. Carroll
Heather E. Simpson
120 Mountain View Boulevard
Basking Ridge, New Jersey 07920
(908) 848-6300 (T)
(908) 848-3610 (F)

and

Barrett Breitung, Esq.
Katherine Streicher Arnold, Esq.
COLLIAU ELENIUS MURPHY
CARLUCCIO KEENER & MORROW
333 S. Wabash Avenue – 25th Floor
Chicago, Illinois 60604
(312) 822-6603 (T)
( 312) 817-2486 (F)

Counsel for Intervenors
Valley Forge Insurance Company
National Fire Insurance Co. of Hartford
Continental Casualty Company

Dated:  February 17, 2012